IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ALEASE KELLY, AS GUARDIAN AD LITEM FOR THE MINOR CHILD, K. R., ) ) ) ) Plaintiff, ) ) v. ) ) COMMISSIONER OF SOCIAL SECURITY, ) ) Defendant. ) ) | Civil Action No. 3:05-702-CMC-JRM<br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Alease Kelly ("Ms. Kelly"), on behalf of her minor daughter, Plaintiff K. R., brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") .

**ADMINISTRATIVE PROCEEDINGS**

On September 27, 1999, Plaintiff applied for SSI. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held March 23, 2001, the ALJ issued a decision dated May 29, 2001, denying benefits. The Appeals Council upheld the decision of the ALJ on April 23, 2002. Plaintiff subsequently filed suit in this Court on June 25, 2002, requesting a reversal of the prior determinations of the Commissioner. On September 25, 2003, this Court remanded the case for further proceedings (Tr. 216-219). A second hearing was held on March 23, 2004. The ALJ issued a decision on June 21, 2004, denying benefits.

K.R. was eleven years old at the time of the ALJ's decision. She alleges disability since November 29, 1992 (her birth), due to the severe impairments of attention deficit hyperactivity disorder ("ADHD") and learning problems.

The ALJ found (Tr. 203):

1. The claimant is 11 years old and has never engaged in substantial gainful activity.

2. The claimant has Attention Deficit Hyperactivity Disorder, a history of an articulation disorder and a learning disability, impairments which cause more than minimal limitations and are thus "severe" within the regulatory definition.

3. The claimant has an underlying impairment which could reasonably cause some functional limitations, but evaluation of the evidence shows that the subjective allegations are not credible to cause marked and severe functional limitations (<u>SSR</u> 96-7p).

4. The claimant does not have a medically determinable physical or mental impairment or combination of impairments which results in marked and severe functional limitations.

5. The claimant has no impairment or combination of impairments which meets or medically or functionally equals the requirements of a listing in the Listing of Impairments in Part B or Part A of Appendix 1, Subpart P, Regulations No. 4.

6. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

On January 27, 2005, the Appeals Council declined to assume jurisdiction of the case. Plaintiff filed this action on March 4, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales,</u> 402 U.S. 389 (1971) and <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner,

Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL RECORDS/SCHOOL RECORDS/TESTIMONY

Plaintiff was treated by Dr. Sheldon B. Kall, a pediatrician, for various ailments including ear infections, eczema, and allergies from February 4, 1999 to February 9, 2000. Tr. 100-110. In September 1999, when she was six years old, Plaintiff was diagnosed with ADHD, for which medication was prescribed. Tr. 104. In November 1999, Dr. Kall noted that Plaintiff was hyper, but was "doing much better." Tr. 102.

Plaintiff was treated at Lexington County Mental Health beginning in March 2000. Tr. 145-160, 169-172, 231-237. On March 6, 2000, mental health therapist Deborah Bachand examined Plaintiff with Dr. Shaw Evans, a psychiatrist. Ms. Bachand noted that Plaintiff responded well to medication. Ms. Kelly reported that Plaintiff was socializing appropriately and had immediate improvement at home and school on medication. Tr. 152. On May 8, 2000, Plaintiff was reported to be doing fairly well overall. Tr. 150. Plaintiff was noted to be doing well overall both at home and school with her medications helping her greatly on August 3, 2000. Tr. 148. On December 7, 2000, Ms. Kelly reported that Plaintiff was doing well with fewer aggressive outbursts and improved sleep. Tr. 171. A nurse reported on September 12, 2003, that Plaintiff had been stable on medications without side effects for six to nine months. Tr. 264-265. On December 29, 2003, Plaintiff was reportedly doing very well overall. It was noted that she was alert, fully oriented, cooperative, and had linear thoughts. Tr. 260.

3

Plaintiff underwent a consultative evaluation by Dr. Robespierre M. Del Rio, a psychiatrist, on January 22, 2000. Tr. 97-99. Ms. Kelly reported that Plaintiff was hyperactive, did not listen to her teacher, threw temper tantrums, and threatened to stab her teacher. Tr. 97-98. Dr. Del Rio's examination revealed that Plaintiff was fully oriented, her speech was coherent and relevant, and there was no indication of psychomotor agitation. Tr. 98. Plaintiff was essentially cooperative and responsive to questions asked. Her personal hygiene and grooming were appropriate. Dr. Del Rio found no overt evidence of a thought disorder. Plaintiff's thought processes were rational and goal oriented, her memory was intact, and she was attentive throughout the evaluation. Tr. 98. Dr. Del Rio noted that Plaintiff attended regular classes in the first grade, could perform age appropriate chores with minimal supervision, and could maintain activities of daily living with reminders. She had the ability to care for her personal needs and to interact and communicate with others. Dr. Del Rio noted that there was no clear evidence of impaired social functioning, and Plaintiff could complete tasks, receive, and integrate information if given ample time and instruction. He diagnosed ADHD, a behavior disorder not otherwise specified, and eczema. Tr. 99.

Plaintiff was evaluated by Dr. Mary Lee Platz, a school psychologist, on May 26, 2000. Tr. 114-120. Although Plaintiff was referred to Dr. Platz for evaluation because of behavioral issues, during a four-week behavior intervention program no behavior problems were evident. Plaintiff's teacher reported that Plaintiff's behavior had improved and she could sit still, not blurt out, and get along better with her classmates. Ms. Kelly reported that Plaintiff followed oral directions at home, did not engage in risky behavior or have frequent accidents, but she interrupted frequently. Tr. 115. Dr. Platz observed Plaintiff in the classroom on several days and noted that Plaintiff was on task approximately the same amount of time as her peers, but had considerable difficulty getting organized and shifting from daily oral language to the reading part of the lesson and was off task

4

when she tried to straighten her desk. Plaintiff missed most of her teacher's oral instructions, but then became intensely involved in writing practice and continued to work until the teacher asked her to stop. Dr. Platz noted that Plaintiff was extremely cooperative, was very task oriented, and worked very hard. Tr. 116. IQ testing revealed a verbal IQ of 95, performance of 108, and full scale of 101, indicating average intellectual function. Tr. 117. Dr. Platz concluded that Plaintiff had learning disabilities in basic reading skills, reading comprehension, and written expression. She noted that Plaintiff benefitted from her educational placement since beginning medication and concluded that a behavior plan at school did not seem to be needed. Tr. 119.

On July 20, 2000, Plaintiff was evaluated by Dr. Franklin J. Klohn, a psychologist. Tr. 127-130. During the examination, Plaintiff exhibited oppositional and immature behavior; her motivation and concentration were extremely variable; and her emotions were volatile. Dr. Klohn noted that Plaintiff had not failed any classes. Test results showed high average intellectual functioning, with a full scale IQ of 115. Tr. 129. Plaintiff's reading level was one year below grade expectations. Tr. 129. Dr. Klohn diagnosed a reading disorder, learning disorder, an adjustment disorder, and oppositional-defiant disorder. Tr. 130.

On February 11, 2000, Dr. Edward D. Waller, a State agency psychologist, reviewed Plaintiff's records and completed a Childhood Disability Evaluation Form. Tr. 136-139. He found that Plaintiff's impairments did not meet, medically equal, or functionally equal a Listing. Tr. 136, 138. Dr. Waller determined that Plaintiff had "less than marked" limitations in the areas of social functioning and concentration, persistence and pace; and no evidence of limitation in the areas of cognitive/communicative functioning, motor function, and personal function. Tr. 138.

On August 21, 2000, Manhal Wieland, a State agency psychologist, reviewed Plaintiff's medical records and found that Plaintiff's impairments did not meet, medically equal, or functionally

5

equal a Listing. Tr. 131, 133. He determined that Plaintiff had less than marked limitations in the areas of cognitive/communicative function; social function; and concentration, persistence, and pace. Dr. Wieland also found that Plaintiff had no evidence of limitation in the areas of motor function and personal function. Tr. 133.

In November 1999, Plaintiff began attending speech therapy after some speech and language difficulties were discovered during a routine screening. Tr. 111. On April 14, 2000, Emma McKenzie, Plaintiff's speech therapist, reported that Plaintiff scored poorly on standardized speech and language tests, but could effectively communicate her basic needs, carry on age appropriate conversation with adults and peers, and understand and follow simple directions. Ms. McKenzie noted that Plaintiff did not properly articulate certain speech sounds, but Plaintiff's speech was understandable and improved with repetition. She reported that Plaintiff had vocabulary and grammar deficiencies, but had a thirst for knowledge and was making good progress in therapy. Tr. 111-112. On September 18, 2000, Ms. McKenzie opined that Plaintiff had moderate to marked limitations in the area of cognitive/communicative functioning. Tr. 161. She indicated that Plaintiff scored more than two standard deviations below the mean on one language test, but also stated that other tests did not demonstrate that level of impairment. Ms. McKenzie noted that Plaintiff's speech and language impairment overall was more in the moderate range. Tr. 162. Plaintiff was dismissed from speech classes after her last screening/evaluation in February 2002. See Tr. 315.

On September 11, 2000, teacher Kathie Newell opined that Plaintiff had marked limitations in the areas of cognitive/communicative function and concentration, persistence, and pace. Tr. 141. On September 18, 2000, teacher Fran O. Bolin opined that Plaintiff had, at most, moderate functional limitations. Tr. 165-166.

During the 2000-2001 school year (second grade), Plaintiff attended resource reading classes through her school's special education program. Tr. 122-127. Plaintiff's school Individual Educational Plan ("IEP") records dated from 2002 to 2004 indicate that Plaintiff continued to have reading problems and received special education services approximately one hour a day, but speech services were discontinued. Tr. 266-328. On January 14, 2004, teacher Julie New filled out a functional equivalency assessment ("FEA") form in which she noted none to marked limitations in acquiring and using information, none to moderate limitations in attending and completing tasks, none to marked limitations in interacting and relating with others, and none to marked limitations in taking care of oneself. Tr. 238-244. On that same date, teacher J. Matthews completed an FEA in which she found none to extreme limitations in acquiring and using information, none to extreme limitations in attending and completing tasks, none to marked limitations in interacting and relating with others, and none to marked limitations in caring for oneself. Tr. 245-251.

At the second hearing, Ms. Kelly testified that Plaintiff attended the fifth grade and had transferred to a new school because the principal at her old school was going to send Plaintiff to an alternative school if she did not stop acting up. Ms. Kelly, however, admitted that she did not have any documentation to that effect. Tr. 325. Ms Kelly testified that Plaintiff got in trouble at school approximately once a week for which she received in-school suspension or was not allowed to go to recess.[1] Tr. 328. She claimed that she did not tell Dr. Evans about Plaintiff's acting out because she did not want to upset Plaintiff. Ms. Kelly disciplined Plaintiff by making her sit down and read a book, sending her to time-out, or talking calmly to her about her behavior. Tr. 332-33. It would

---

[1] Only two disciplinary notes were submitted to support this assertion. On February 17, 2004, Plaintiff was suspended for three days for fighting in the classroom. Tr. 228. She was suspended from riding the bus for three days on February 26, 2004 for fighting. Tr. 229

7

take two hours to calm Plaintiff down if she got upset. Tr. 334. Plaintiff reportedly often hit her siblings and fought with other children. Tr. 334, 338. She also put holes in the walls. Tr. 338. Ms. Kelly stated that Plaintiff had chores of cleaning her room, washing dishes, sweeping, and folding her clothes, but only did them if she felt like it. Tr. 335. If Plaintiff did not do her chores she was not allowed to go outside, ride her bicycle, or watch television. Tr. 336.

Plaintiff testified that she took resource classes in math and reading and was doing well. Tr. 343. She stated that she fought with two boys when they threw popcorn at her and hit her and that she only fought with her siblings if they were playing. Tr. 345. Plaintiff said that she got in trouble four times for fighting at school and was punished with a "silent lunch" or a "D-note." Tr. 345-346. She testified that she did not usually have to do her chores, did them when she wanted to, and her mother usually did the chores. Tr. 348.

## DISCUSSION

A three-step test is established for purposes of adjudication of a child's SSI benefit claims. The first determination is whether the child is working and performing substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not working, it must then be determined whether the child suffers from a severe (more than slight or minimal) impairment or combination of impairments. 20 C.F.R. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment(s) meet, medically equal, or functionally equal an impairment in the Listing of Impairments ("Listings") under Appendix I to Subpart P of the Administrative Regulations Part 404. 20 C.F.R. § 416.924(d).

The parties do not dispute that at the first step, Plaintiff was not working and that at the second step she had the severe impairments of ADHD, history of an articulation disorder, and a

learning disorder. At issue is whether Plaintiff met, medically met, or functionally equaled the Listings at § 112.11 for ADHD.

An impairment is medically equivalent to an impairment in the Listings if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 416.926(a). An impairment is functionally equal to a listed impairment if there is an "extreme" limitation in one of six specific functional "domains" or a "marked" limitation in at least two domains. 20 C.F.R. § 416.926a(a). The domains considered are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving around and manipulating objects, (5) caring for oneself, and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

Plaintiff alleges that: (1) the ALJ failed to properly evaluate the findings made by Plaintiff's treating doctor and her teachers, and (2) the ALJ erred in failing to find that Plaintiff met or functionally equaled one of the listed impairments. The Commissioner contends that the ALJ's decision is supported by substantial evidence.[2]

A.      Treating Physician

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

Plaintiff alleges that the ALJ erred in failing to accept the opinion of Dr. Evans, her treating psychiatrist. On September 2, 2000, Dr. Evans completed what was termed an FEA form[3] in which he opined that Plaintiff had marked limitations in the areas of cognitive/communicative function; activities of daily living; concentration, persistence, and pace; and personal needs. Tr. 143-144. On January 14, 2004, Dr. Evans completed a FEA form[4] in which he opined that Plaintiff had marked limitations in the domains of acquiring and using information and attending and completing tasks. Tr. 252-259. The Commissioner contends that the ALJ's decision to discount Dr. Evans' opinions is supported by substantial evidence.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record, and it is well supported by

---

[3] Although the form was titled FEA assessment, it did not address the six functional equivalency domains described above, but instead addressed criteria set forth in part B of the Listing at § 112.11 for children with ADHD.

[4] This form, unlike the other, addressed the domains discussed above.

clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to discount Dr. Evans' opinion is supported by substantial evidence. He specifically discussed his reasons for discounting Dr. Evans' opinion, that the assessment was not supported by specific examples and was contradicted by Dr. Evans' own treatment notes. Tr. 201. Dr. Evans merely stated that he relied on psychiatric assessment and psychoeducational testing (Tr. 144, 252) and did not give any further information as to the basis of his opinions. Contrary to Dr. Evans' opinions in the FEA forms, treatment records from Lexington County Mental Health indicate that Plaintiff was doing fairly well overall and her medications were producing improvement in her behavior on May 8, 2000. Tr. 150. On December 7, 2000, Plaintiff reportedly was doing well. Tr. 171. On September 12, 2003, it was reported that Plaintiff had been stable on medications without side effects for six to nine months. Tr. 264, 265. A clinical note on December 29, 2003, indicated that Plaintiff continued to do very well overall and was alert, fully oriented, cooperative, and had linear thoughts. Tr. 260. The ALJ's decision is also supported by the medical records of Dr. Kall, Plaintiff's treating pediatrician, who noted that Plaintiff's ADHD improved with medication. See Tr. 102. Additionally, the ALJ's decision is supported by examinations of Dr. Del Rio and Dr. Platz, as discussed above. Testing by Dr. Platz and Dr. Klohn revealed normal or above IQ. The ALJ's decision is also supported by the findings of the State agency psychologists. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as

expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

Plaintiff claims that Dr. Evans' opinion is supported by the opinions of Plaintiff's teachers. These opinions (as noted by the ALJ - Tr. 201), however, differed from each other, and there was no consensus between these teachers as to Plaintiff's degree of limitation. Contrary to reports of problems acquiring and using information, testing by Dr. Klohn only revealed that Plaintiff's reading level was one year below grade expectations. In November 2002, when Plaintiff was in fourth grade, it was noted that she was on an upper third grade reading, approximately third grade writing, and upper third/beginning fourth grade math. Tr. 302.  When Plaintiff was in fifth grade, an IEP report signed by teachers New and Matthews indicated that testing showed that although Plaintiff had some problems with word recognition, she was reading and comprehending at the fifth grade level with a score of 80% on the Brigance reading comprehension subtest, had excellent handwriting skills, had knowledge of how to provide correct punctuation and structure of a complete sentence when written in isolation, and successfully completed the  fifth grade level of the Brigance math placement subtest. It was again recommended that Plaintiff spend the majority of her time in regular education (five hours a week in special education and twenty-five hours a week in regular education). Tr. 276.

### B.    Met or Medically Equaled Listing

It is unclear, but Plaintiff appears to allege she met or medically equaled the Listing for ADHD.  The Commissioner contends that Plaintiff did not meet or medically equal a listing because she fails to show that she met part A or B of the Listing at § 112.11.

Substantial evidence supports the ALJ's decision that Plaintiff did not meet or medically equal the Listing at § 112.11. The Listing requires that both A and B below be met:

> A. Medically documented findings of all three of the following:
>    1. Marked inattention; and
>    2. Marked impulsiveness; and
>    3. Marked hyperactivity;
> And
> B. .... [which results] in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11. Section 112.00(B)(2) requires:

> a. Marked impairment in age-appropriate cognitive/communicative function,... or
> b. Marked impairment in age-appropriate social functioning, ...or
> c. Marked impairment in age-appropriate personal functioning,... or
> d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2).

Although Plaintiff was diagnosed with ADHD, her behavior improved with medication, and there is no indication that she met part A of § 112.l1 (marked inattention, marked impulsiveness, and marked hyperactivity). In November 1999, Dr. Kall noted that Plaintiff was hyper, but was doing much better on medication. Tr. 102. In January 2000, Dr. Del Rio noted that Plaintiff was essentially cooperative, responsive, and attentive. Tr. 98. In March 2000, records from Lexington County Mental Health reveal that Plaintiff was responding well to medication. Tr. 152. Ms. Kelly admitted in August 2000, that Plaintiff's medications were helping greatly. Tr. 148. Records from Lexington County Mental Health in late 2003 indicated that Plaintiff was stable on medications without side effects and she continued to do very well overall. Tr. 260, 264, 265. Thus, the record does not support a finding that Plaintiff's ADHD, when treated with medication, resulted in marked inattention, marked impulsiveness, and marked hyperactivity. "If a symptom can be reasonably

controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

Even if Plaintiff could establish that she met or medically equaled the Part A requirements of § 112.11, she fails to show that she met or medically equaled the Part B requirements (marked limitations in two or more areas).  Plaintiff appears to argue that she had marked limitations in the areas of cognitive/communicative function, activities of daily living, and concentration/pace.

The Commissioner acknowledges that Plaintiff had significant difficulties in the area of concentration, persistence, and pace, but this improved with medication and even if she was markedly limited in that area she has not shown that she was markedly limited in another area. Defendant's Brief at 15.  Plaintiff fails to show she had marked impairment in cognitive/communicative function, as testing showed that Plaintiff had average to high average intellectual function with a strong desire to learn.  Tr. 117, 119, 129.  Although Plaintiff had a learning disorder and reading problems, she attended mostly regular classes and her reading level was only one year below grade level.  Tr. 129.  Although Plaintiff had a history of a speech impairment, she could effectively communicate her basic needs, carry on age-appropriate conversations with adults and peers, and her speech was understandable.  Tr. 111-112.

As to social functioning, Plaintiff has a history of some fights at school and home, but Dr. Del Rio found no clear evidence of impaired social functioning and found she could interact with others.  Plaintiff also fails to show that she had marked limitations in the area of personal functioning as there is no evidence she had difficulty caring for her personal needs.

  C. <u>Functional Equivalence</u>

Plaintiff alleges the ALJ erred in determining that she did not functionally equal one of the Listings.  Specifically, she claims she has marked limitations in the areas of

cognitive/communicative and concentration/pace based on the opinion of Dr. Evans and the findings of speech therapist McKenzie. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

The ALJ's determination that Plaintiff's impairments did not have the functionally equivalent consequences of a listed impairment is supported by substantial evidence. Provisions for functional equivalence are established under 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate one "extreme"[5] limitation in one area of functioning, or show "marked"[6] limitation in two areas of functioning. 20 C.F.R § 416.926a(b). As noted above, there are six domains to be considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926(b)(1)(i-

---

[5]An "extreme" limitation is found when an impairment:

interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities. [A claimant's] day-to-day functioning may be very seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating [the SSA] give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e).

[6]A "marked" limitation is found when an impairment(s):

interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities. [A claimant's] day-to-day functioning may be seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning [the SSA] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e).

vi) and (g-l). In assessing functional limitations, the ALJ is required to consider all evidence from medical and non-medical sources, including parents, teachers, and other people who knew the claimant. See 20 C.F.R. § 416.924a(a).

The parties do not appear to dispute that Plaintiff had marked limitations in the area of attending and completing tasks. Thus, the issue is whether Plaintiff had a marked limitation in at least one other domain.

The ALJ's determination that Plaintiff did not have marked limitations in another domain and thus did not functionally meet the Listings is supported by substantial evidence. The domain of acquiring and using information relates to how well a claimant could learn information and use the information learned. See 20 C.F.R. § 416.926a(g). Despite her learning disorder and reading difficulties, Plaintiff attended regular classes for all but one hour a day, did not fail any classes, and had a reading level that was only one year below grade level. See Tr. 129. IQ testing revealed average to high average intellectual functioning. Tr. 117, 129. Dr. Del Rio opined that Plaintiff could complete tasks and receive and integrate new information. Tr. 99.

The domain of interacting and relating with others pertains to how well a claimant can initiate and sustain emotional connections with others, develop and use common language, cooperate with others, comply with rules, respond to criticism, and respect the possessions of others. 20 C.F.R. § 416.926a(i). Although Ms. Kelly testified at the second hearing that Plaintiff got into trouble at school about once a week and was to be transferred to an alternative school, the record does not support the frequency alleged. Dr. Del Rio noted that Plaintiff could interact and communicate with others and that there was no clear evidence of impaired social functioning. Tr. 99. Ms. Kelly admitted in March 2000 that Plaintiff was socializing appropriately. Tr. 152. Speech therapist McKenzie noted that Plaintiff's language difficulties did not preclude her from being able to

16

communicate with others and that Plaintiff made good progress in speech therapy. Tr. 111-112. Speech therapy was later discontinued. Although Plaintiff demonstrated some behavioral problems, medications improved her behavior. During a four-week evaluation in 2000, no behavioral problems were noted. Tr. 114. The ALJ's decision is also supported by the findings of the State agency psychologists, as discussed above.

The domain of moving about and manipulating objects considers how a claimant moves her body from one place to another and how she moves and manipulates things. See 20 C.F..R. § 416.926a(j). The domain of caring for oneself concerns how well a claimant maintains a healthy emotional and physical state. 20 C.F.R. § 416.926a(k). The domain of health and physical well being concerns the cumulative physical effects of mental impairments and their associated treatment on a claimant's functioning. See 20 C.F.R. § 416.926a(1). The ALJ's determination that Plaintiff did not have any limitations in these areas is supported by substantial evidence. There is no evidence of impaired functioning due to any physical impairment. Dr. Klohn reported that when Plaintiff was seven she could brush her teeth, wash up, select clothes and dress herself, tie shoes, and ride the bus to school. Tr. 129. Dr. Platz found that Plaintiff did not engage in risky behavior or have frequent accidents. Tr. 115. Plaintiff could perform chores with minimal supervision, ride a bike, care for her personal needs, and perform activities of daily living with reminders. Tr. 99, 335-336.

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson v. Perales</u>, <u>supra</u>. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 31, 2006
Columbia, South Carolina